HEIRS OF GONZÁLEZ, PLAINTIFFS AND APPELLEES, v. SUCCESSORS OF ROQUE GONZÁLEZ & Co., LTD., DEFENDANTS AND APPELLANTS.

ÁLVAREZ ET AL., PLAINTIFFS AND APPELLANTS, v. PORTELA ET AL., DEFENDANTS AND APPELLEES.

APPEALS from the Second District Court of San Juan in Injunction Proceedings.

Nos. 2767 and 2768.—Decided July 23, 1924.

PARTNERSHIP—INJUNCTION—USE OF NAME—GOOD WILL—EVIDENCE.—The widow and daughter of Roque González, silent partners of Succession of Roque González, Ltd., dry-goods merchants, brought injunction proceedings against Successors of Roque González & Co., also dry-goods merchants, to restrain them from using the name of Roque González in the firm name of the defendant, of which the plaintiffs were formerly silent partners, alleging that that name belonged exclusively to them, and claiming damages for the usurpation. *Held*: That apart from the fact that both firms were infringing article 147 of the Code of Commerce because Roque González was dead when both firms were organized and therefore his name should not appear in the firm name of either, the evidence showing that upon the expiration of the partnership term of the original limited firm of Successors of Roque González & Co. the plaintiffs, who were members of it, sold their interests in the firm to two of the managing partners who, according to the contract of sale, became "the sole persons interested in the properties, rights, interests and liquidation," the vendors relinquishing "all participation and interest" in the properties, it follows that the good will of Successors of Roque González & Co. was one of the assets conveyed by the vendors who, therefore, have no cause of action, especially as it has not been shown that damages were caused.

ID.—ID.—DAMAGES.—The existence of actual damages or unfair competition in business not having been shown, an injunction does not lie.

The facts are stated in the opinion.

*Mr. H. G. Molina* for the appellants.

*Messrs. Texidor & De la Haba* for the appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Two injunction proceedings were instituted in the lower court in April of 1921. They are intimately related and were disposed of by judgments of August 8, 1921, based on a single opinion. The prosecution of the appeals taken from the judgments has been very slow and irksome. The transcript was not filed until May 22, 1922. Months were

spent in the preparation of briefs and there were two hearings in the Supreme Court. The two appeals were heard together and all of the questions involved will be discussed and disposed of in this opinion.

From the documentary evidence it appears that on March 1, 1915, articles of partnership were executed forming in the city of San Juan, Porto Rico, a mercantile partnership "for engaging in the business of buying and selling fabrics, textiles, footwear, clothing, dress goods and haberdashery in particular and in general for engaging in all kinds of lawful business," for a period of two years, subject to extension for another year, under the firm name of *Roque González & Co.*, Roque González and José Benito Alvarez being the managing partners and Agustín Sobrino being a silent partner. The capital of the firm was fixed at $60,000, González contributing $45,000, Alvarez $5,000 and Sobrino $10,000. It was agreed that the death of a partner should not work the dissolution of the partnership, which should be continued in that case to the end of its term "under the management and control of the surviving partner, without the intervention of the heirs of the deceased partner or partners."

On February 17, 1916, or within less than a year after the organization of the partnership, managing partner Roque González died and in accordance with the said stipulation the business was continued under the control of the other managing partner, José Benito Alvarez.

On March 5, 1918, José Benito Alvarez, Agustín González, Laureano Alvarez, Trinidad María de la Asunción Sobrino, widow of Roque González, Raquel María Trinidad González, daughter of Roque González, and Agustín Sobrino, personally or by agents, executed articles of partnership before a notary organizing in San Juan, Porto Rico, a mercantile partnership under the firm name of *Successors of Roque González & Co.*, "for engaging in the business of buying and selling fabrics, textiles, footwear, clothing, dress

goods and haberdashery in particular and in general for engaging in all kinds of lawful business,'' for a period of two years beginning March 1, 1918, subject to extension for another year, the managing partners being José Benito Alvarez, Agustín González and Laureano Alvarez and the silent partners being the widow and daughter of Roque González, and Agustín Sobrino. The capital was fixed at $75,000. J. B. Alvarez contributed $25,000, A. González $25,000, L. Alvarez $5,000 and the silent partners $20,000.

Successors of Roque González & Co. continued in business for the period of three years as extended, and on March 5, 1921, the members, personally or by agents, executed another notarial instrument wherein they stated that they had ''agreed to the dissolution of the firm in a public instrument, to pay their shares to Agustín González and the heirs of Roque González and to appoint a liquidator.'' Carrying this agreement into effect, they declared the firm of *Successors of Roque González & Co.* dissolved and in liquidation and approved the acts of its managing partners, ''it being agreed that Agustín González and the heirs of Roque González should cease to have any participation or interest in the dissolved firm, in its properties and rights or in its liquidation.'' Agustín González deposited a certain sum for the payment of the tax on excess profits and became liable up to a certain sum and for a certain time for the bad debts included in the accounts contained in the balance of February 28, 1921. They also stated that the balance in favor of González was $17,443.92 and that in favor of the heirs of Roque González $8,597.38, and González, for himself and in the names of the heirs, acknowledged having received both amounts and executed a formal receipt therefor. And *''because of the retirement from all participation in the dissolved firm''* of Agustín González and the widow and the daughter of Roque González, it was stated that there remained *''as the only persons interested in the properties, interests and rights and in the liquidation*

*thereof''* the other partners, J. B. Alvarez, L. Alvarez and A. Sobrino, who appointed J. B. Alvarez as liquidator.

On March 11, 1921, José Benito Alvarez and Laureano Alvarez, personally, and José María Alvarez and Agustín Sobrino, by agents, formed a mercantile partnership under the firm name of *Successors of Roque González & Co.,* domiciled in San Juan, Porto Rico, for a period of two years beginning March 1, 1921, subject to extension for ten months more, ''for engaging in the business of buying and selling, at wholesale and retail for their own account or on commission, fabrics, textiles, footwear, clothing, dress goods and haberdashery especially, and in general for engaging in all kinds of lawful business.'' J. B. Alvarez and L. Alvarez were managing partners and J. M. Alvarez and A. Sobrino silent partners. The capital was $86,000, of which J. B. Alvarez contributed $40,000, L. Alvarez $30,000, Sobrino $10,000 and J. M. Alvarez $6,000. It was also stated in the articles that the firm so organized took charge of the liquidation of the firm of *Successors of Roque González & Co.,* dissolved by deed of March 5, 1921, and of which J. B. Alvarez was the sole liquidator.

The new firm organized on March 11, 1921, sent circular letters dated March 1, 1921, to the other merchants reading as follows:

''Dear Sir:—Our partnership contract having expired, the firm doing business in this city under the firm name of *Successors of Roque González & Co., Ltd.,* has been dissolved and a new limited mercantile firm has been organized under the same name, which will be the continuator and liquidator of the business of the dissolved firm, according to articles executed before notary Damián Monserrat Suro of this city.—Its managing pertners are José Benito Alvarez Sobrino and Laureano Alvarez Sobrino and its silent partners are Agustín Sobrino Vicente and José María Alvarez.— Please take notice of the signatures following, and hoping to merit the same confidence as our predecessors, we remain, yours very truly, Successors of Roque González & Co.—José Benito Alvarez

will sign: Successors of Roque González & Co.—Laureano Alvarez will sign: Successors of Roque González & Co.''

The documentary evidence also shows that on March 15, 1921, by a public instrument Gregorio Portela, Valentín Alvarez, Agustín González and the widow and the daughter of Roque González formed a mercantile partnership domiciled in San Juan, P. R., under the firm name of *Succession of Roque González & Co., Ltd.*, ''for engaging specially in the business of buying and selling, at wholesale and retail, for its own account or on commission, textiles, fabrics, silk, footwear, hats, dress goods, notions and haberdashery and in general for engaging in any other lawful business,'' Portela and V. Alvarez being managing partners, and A. González and the *heirs of Roque González* being silent partners. The capital was fixed at $20,000, of which Portela contributed $7,000, V. Alvarez $3,000, A. González $8,000 and the heirs of Roque González $2,000.

On April 11, 1921, the heirs of Roque González, they being his widow and his daughter, filed the petition for an injunction which originated the first of the suits that we are considering against *Successors of Roque González & Co.*, composed of J. B. Alvarez, L. Alvarez, A. Sobrino and J. M. Alvarez. The petition condensed the facts that we have narrated relative to the organization and dissolution of the different firms and in it the following was also alleged:

''And the plaintiff heirs allege that neither expressly nor by any act have they consented at any time that the name of Roque González or of his succession should be included in the firm name of the said partnership but, on the contrary, they have objected to the use of that name.

''VII.—That the use of the name of Roque González by the defendants when there was no member of the said firm of that name and it belongs exclusively to his heirs, does serious damage to the plaintiffs by depriving them of its exclusive use for business purposes and imposing upon the plaintiffs solidary liability with the firm of Successors of Roque González & Co., Ltd., for permitting its use.

"And the paintiffs allege that the use of the name of the deceased Roque González causes them damages which can not be estimated at present, but are, however, irreparable in their nature and without adequate pecuniary compensation and without adequate remedy at law.

"And the plaintiffs allege that all of their efforts to induce Successors of Roque González & Co., Ltd., and its partners to refrain from using the name of Roque González have been fruitless.

"For all of which the plaintiffs pray the court for a writ of injunction against Successors of Roque González & Co., Ltd., commanding them hereafter to abstain from using in any manner the name of Roque González as a part of the firm name of the partnership formed by the members of the defendant and for such other relief as the court may deem proper, with the costs and attorney's fees against the defendants."

The other action under consideration was brought on April 23, 1921, by the defendants in the first action against the firm of *Succession of Roque González & Co., Ltd.*, praying for an injunction restraining the defendants from using in their firm name the names of the heirs of Roque González or the name of Roque González.

The complaint was sustained in the first action and dismissed in the second and the firm of *Successors of Roque González & Co.*, organized March 11, 1921, took the present appeals to this court.

We have examined carefully the record and the various briefs filed and will proceed to state our opinion on the fundamental questions involved, which we believe will dispose of the issues, without discussing separately the errors assigned, as this would extend this opinion beyond all necessary proportion.

There is no doubt that the partnerships mentioned were organized under the provisions of the Code of Commerce which for so many years has been in force in Porto Rico and which, although modified of necessity by the enactment of other laws, has not yet been fully revised as was the Civil Code during the first years of the new sovereignty, or

radically substituted as was the Law of Civil Procedure, the Penal Code, the Code of Criminal Procedure and others. This fact makes it difficult to apply in their entirety and in their own spirit some of the provisions of the Code of Commerce which are in opposition to commercial practices introduced because of the very fact of the transformation adopted.

In these suits everything turns on the names of the defendant firms. What does the Code of Commerce say about this?

Article 122 of that Code provides that as a general rule commercial associations shall be established by the adoption of any of the following forms: 1, The *regular general* copartnership in which all the partners, under a collective and commercial name, bind themselves to participate, in the proportion which may be established, in the same rights and obligations. 2, The *limited* copartnership to which one or more persons contribute a specific amount of capital to a common fund, and become liable for the transactions of the firm executed exclusively by others under a collective name. 3, The *corporation*, in which the members form the common fund by means of specific parts or portions, represented by shares or in any other unquestionable manner, leaving its management to removable managers or administrators, who represent the company under an appropriate denomination according to the purpose or undertaking for which funds are to be employed.

The original firm of Roque González & Co. of 1915, that of Successors of Roque González & Co. of 1918, that of Successors of Roque González & Co. of 1921 and that of Succession of Roque González & Co., Ltd., of 1921 were and are, in accordance with the facts recited, limited partnerships, and article 146 of the Code of Commerce reads as follows: "Limited copartnerships must transact business under the name of all the members thereof, of several of them, or of one only, it being necessary to add in the latter two cases

to the name or names given, the words 'and company' and in all cases the words 'limited copartnership.' '' Article 147 provides that ''This general name shall constitute the firm name, *in which there may never be included the names of special partners.* Should any special partner include his name or permit its inclusion in the firm name, he shall be subject, with regard to persons not members of the copartnership, to the same liabilities as the managing partners, without acquiring any more rights than those corresponding to him in his character of special partner.'' (Italics supplied.)

This being so, little effort is necessary for reaching the conclusion that only the original firm of *Roque González & Co.* of 1915 was named in accordance with the law. In all of the other cases the statute was violated for the reason that *Roque González* had died when they were organized and could not be or appear as a collective partner.

If this were the only question involved; if it were the duty of the courts to inquire, at the instance of any citizen on their own motion, whether or not a certain mercantile partnership was using a name in accordance with the statute, and if it were within their power, in a negative case, to take the action necessary to prevent it, then it would be very easy and proper to hold in these cases that both defendant firms should cease to use in their firm names the name of Roque González who died in 1916.

But such is neither our duty nor our power. Here, invoking the ancient Code of Commerce, there have been instituted two modern injunction proceedings of an equitable nature and this involves other considerations that must be taken into account in deciding the cases.

Referring now exclusively to the first proceeding, we ask: What right have the plaintiffs to the writ of injunction prayed for? They allege that they are the widow and daughter of Roque González and, therefore, the inheritors of his name. Is the name of a person property which is ac-

quired by inheritance? The surname of a person is transmitted to his children and descendants and cases might be imagined wherein the children and descendants could successfully resort to the courts in connection with the exclusive use of the surname. But that is not the case here. This case does not refer to the name of *Roque González,* or to the surname *González,* but to the name of *Successors of Roque González & Co.*

When was this name first used commercially? We know of the organization of *Roque González & Co.* in 1915. Judging from the name given to the firm, from the capital contributed by the partners and from the oral evidence, Roque González was an old merchant of good standing. José Benito Alvarez associated with him and upon the death of Roque González assumed the exclusive management of the firm. What occurred upon the expiration of the contract? A new partnership was formed. Who formed it? The former member José Benito Alvarez, whose contribution to the capital was increased from $5,000 to $25,000, and former silent partner Sobrino. The widow and the daughter of Roque González became silent partners and two new members were brought into the firm—Agustín González and Laureano González. What was the relation between the new firm and the old firm? Nothing is said about it in the articles. Yet in fact the former was the continuator of the latter. Its name indicated the real state of the facts: *Successors of Roque González & Co.*

Then for the first time was used the firm name which originated these suits, in violation of the provisions of the Code of Commerce, as we have said, by the unanimous agreement of the partners. That name was from that time (1918) one of the assets of the firm and toward giving it prestige were directed the efforts of the partners, especially of José Benito Alvarez who continued to be the controlling head of *Successors of Roque González & Co.* (1918) as he had been of *Roque González & Co.* since the death of Roque

González in 1916. This statement is in accordance with the oral evidence and what appears from the articles of 1918. For example, therefrom it appears that Agustín González contributed as much capital as José Benito Alvarez and notwithstanding this Alvarez's salary was fixed at $2,000 annually and that of González at $1,000, and it was agreed that Alvarez should receive a greater share of the profits. González, it seems, was a man of delicate health who could not devote all of his energies to the business.

In this condition the three years of the partnership term elapsed. The business prospered, but the relations between the partners necessitated certain changes. It had been agreed in the articles of 1918 that "upon the expiration of the partnership term or of its extension, if any, the firm shall be liquidated, first paying the liabilities and then the shares of the members in cash, merchandise, property, accounts and bills receivable, in proportion to their interest." This course was not followed. The members who really managed the business agreed to buy out the members whose only connection with the firm was their contributed capital, i. e., Agustín González and the widow and daughter of Roque González.

At the trial Laureano Alvarez testified at length, and to the following question: "What was the agreement?" replied: "To buy his interest—referring to Agustín González—and those of the widow and daughter of Roque González. . . . To pay them in cash for their entire interests in the firm. . . ." And Victorio Ochoa, the only other witness, testified that he intervened in the negotiations "concerning the offer of sale" as agent of Agustín Sobrino, one of the silent partners, who it may be said in passing is the father of the widow of Roque González. "Their shares were paid for in cash—referring to A. González and the widow and daughter of Roque González—in accordance with the stock on hand, the accounts, etc." And he also testified

that this course was very different from the liquidation agreed upon in the partnership contract of 1918.

It is well to indicate that witness Victorio Ochoa not only acted in that instance as the agent of Sobrino, but on other occasions represented the widow and daughter of Roque González, and in the said articles of 1918 there is a paragraph reading as follows: "Any questions that may arise between the managing partners shall be submitted to Victoriano Ochoa or to other persons if necessary."

We have not lost sight of the provisions of the Law of Evidence invoked by the appellee. The articles should and will prevail for the purposes of our decision, but the foregoing statements and others of Ochoa to which we shall hereafter refer give color to and explain satisfactorily certain clauses of the articles of dissolution and point out the actual facts.

The theory of the purchase of the interests of Agustín González and the widow and daughter of Roque González appears clearly from the articles of 1921. When in 1918 the firm of *Roque González & Company* terminated nothing was said about its liquidation. There was nothing to be done, for all of the members went into the new firm and instead of its liquidation it was continued. Matters were somewhat different in 1918, as on that occasion three members separated from the firm. For that reason they agreed "to the dissolution in a public instrument, to pay the shares of Agustín González and the heirs of Roque González and to appoint a liquidator," as stated in the contract. José Benito Alvarez was appointed liquidator and he continued in the same establishment with the same books and the same printed stationery, and upon the organization of the new firm of Successors of Roque González & Co. in 1921 he gave it charge of the liquidation, the said firm in fact continuing the business.

But that is not all. There are in the articles of dissolution express statements that the members bought out "re-

tire from all participation and interest in the dissolved firm, and in its assets, rights and liquidation," the other members, who in 1921 formed the new firm of *Successors of Roque González & Co.,* becoming "the sole persons interested in the properties, rights, interests and liquidation."

Although nothing was expressly agreed upon, it is a fact that the good will of *Successors of Roque González & Co.* (1918) was one of its assets and was its exclusive property; therefore, the logical conclusion is that that asset was also included in "the only persons interested in the properties" and that those who retired "from all participation and interest" in the said asset have no claim to assert. In other words, the firm name of Successors of Roque González & Co. adopted in 1918 became the property of the firm then organized and could be disposed of by the firm; and it should be understood, in accordance with the circumstances, that it was disposed of in the manner stated.

The conclusion at which we have arrived is fully supported by the testimony of Laureano Alvarez and Victoriano Ochoa, whose statements stood uncontradicted. We shall extract those of Ochoa, preserving the language of the witness. He said:

"The commercial custom for many years in San Juan is that when one of the partners dies or any change occurs by the purchase by one partner of the interest of the other, if the former does not want to use his own name he uses the old name, which is known, with the addition of the words 'successors of' and continues the same business, taking advantage of the interest purchased. . . . .

"This is a commercial custom. We, Lamadrid & Co., are in the same position. The custom is that when the first partner dies, upon the expiration of the term the new firm is called successors, and such is the case with most of the firms in San Juan. That is when the interest of one is paid for in cash, as otherwise there is a liquidation which is always prejudicial.

"    " *    *    *    *    *    *    *

"Yes, instead of waiting for a liquidation it is paid for in cash. A liquidation always brings losses, and at this time more particularly, as $15,000 or $20,000 may be lost. When one buys another

out the purpose is to continue the same business, using the same books, and a firm name is needed. When one dies his heirs remain and a second person has the right to associate with the former partner, using the same firm name and the same books. A liquidation is prejudicial. When two separate and one says that he does not want his name to be used, then he is not bought out and each uses his own name.

*     *     *     *     *     *     *     *

"Yes, we have continued with the name of L. Lamadrid & Co. We did not want to change it because it is a great advantage for the continuators and for the outgoing partners. The advantage to the outgoing partner is that he gets his share in cash."

To the question: "Why did the firm continue with the old name instead of being called Victoriano Ochoa & Co. or Benito Alvarez & Co.?" he replied "Because of what I have already said. Inasmuch as everything is purchased and the liquidation is made in cash, the intention is to continue using everything belonging to the firm—books, premises, etc.—and to continue the same accounts. That is the advantage of not making any change and that is the reason why payment is made in cash."

After several questions and answers concerning his intervention in the negotiations preliminary to the articles of dissolution, the following occurred:

"Q.—Was anything said during these negotiations as to whether the new firm would continue to use the old name? A.—Nothing was said about the name; only that the same business would be continued. Q.—Was nothing said about the name? A.—Not a word. It was understood that it would continue as it was, for that was the reason why one bought the other out. Plaintiff's attorney: Q.—If nothing was said, then the understanding was that the firm would continue with the same name? A.—Yes, with the same name."

Under these circumstances we think that the widow and daughter of Roque González, the plaintiffs in the first of the two suits, have not shown their right to prevent the defendants from using as their firm name the name of *Suc-*

*cessors of Roque González & Co.,* especially as they have elected the remedy by injunction for asserting their alleged right.

Besides, in order to recover judgment, the plaintiffs should have shown the existence of the damages alleged in their complaint, and in our opinion there is no such proof.

It has been suggested that if the plaintiffs permit the present conditions to continue they might be subjected to liability under subdivision 2 of article 147 of the Code of Commerce. We can not conceive such liability. The plaintiffs are not silent partners. Their name is not Roque González. The daughter inherited her father's surname, but not his given name. The defendant firm of *Successors of Roque González & Co.* of 1921 was organized by a contract set out in a public instrument which is transcribed in the mercantile registry and which shows who are its responsible members. The circular letter that the defendant firm sent to its business connections and to merchants generally is clear in terms. There is not, then, in our opinion, the most remote possibility that the plaintiffs will suffer damages as a consequence of the statute cited in connection with the facts of this case.

As regards the second suit, we have examined all of the evidence and will say that although it shows that there have been some difficulties in connection with the addressing of letters and the collection of some bills due to the similarity existing between the name of Succession of Roque González and Successors of Roque González, we do not believe that actual damages and unfair competition have been shown. Such being the case, the said action can not be sustained.

The judgment rendered in case No. 2767 is reversed and substituted by one dismissing the complaint without costs, and that rendered in No. 2768 is affirmed.

*No. 2767 reversed.*
*No. 2768 affirmed.*

No. 2767.—Justices Wolf and Hutchison concurred.

Justices Aldrey and Franco Soto dissented.

No. 2768.—Mr. Justice Hutchison concurred.

Justices Aldrey and Franco Soto concurred in the judgment.

Mr. Justice Wolf dissented.